AO 106 (Rev. 01/09)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
District of Colorado

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) Case No.  *09-sw-5316-CBS* |
| Samsonite Combination Lock Briefcase IRS-CI Office 1999 Broadway St., 27th Floor Denver, CO 80202 | ) ) ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____ State and _____ District of _____ Colorado _____ *(identify the person or describe property to be searched and give its location):*  **See Attachment A**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:  **See Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of _____ 18 _____ U.S.C. § §1956, 287, and 1343 and the application is based on these facts:

**See attached affidavit**

' Continued on the attached sheet.

' Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **10/13/09 at 2:30 pm**

_____
*Judge's signature*

City and state: **Denver, CO**

**Craig B. Shaffer, United States Magistrate Judge**

## AFFIDAVIT FOR SEARCH WARRANT

1. I, Trista G. Merz, being duly sworn, hereby depose and state:

### INTRODUCTION

2. The Internal Revenue Service-Criminal Investigation (IRS-CI) has collected information concerning the illegal activities of Thomas William Quintin (Quintin), the owner of Total Tax Services, Total Tax Services, LLC, Total Tax and Accounting and DTC Gold Company. Quintin is believed to be involved in federal wire fraud, money laundering and tax violations in Colorado. This affidavit is being given in support of an application for search warrants for the business address of (1) Total Tax Services, Total Tax Services, LLC, Total Tax and Accounting, and DTC Gold Company located at 7887 E. Belleview, Suite 1100, Englewood, Colorado 80111, (2) Stay Bridge Hotel Room 3324, 7150 South Clinton Street, Centennial, Colorado 80112, (3) thumb drive, (4) cell phone, (5) Samsonite combination lock briefcase, (6) mail box, key number 108, located at Arapahoe Pack and Ship, 9674 East Arapahoe Road, #108 Greenwood Village, Colorado 80112, (7) Samsonite Padlock briefcase and (8) Compaq Presario computer as more fully described in Attachment A, which is attached hereto and incorporated herein by reference. I believe those locations and items will contain evidence, fruits and instrumentalities of Title 18 United States Code, Section 287 (False and Fictitious Claims), and Title 18 United States Code, Section 1956 (money laundering), and Title 18 United States Code, Section 1343 (wire fraud) as more fully described in Attachment B, which is attached hereto and incorporated herein by reference.

3. The statements contained in this affidavit are based, in part, on independent knowledge by your affiant and, in part, on information provided to your affiant by other law

1

enforcement officers, the personnel of law enforcement agencies and independent witnesses. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the requested search, as I have not included all facts developed during the investigation but only those facts that I believe are necessary to establish probable cause as described.

## KNOWLEDGE AND EXPERIENCE OF AFFIANT

4. Your affiant is a Special Agent with the Internal Revenue Service ("IRS"), Criminal Investigation ("CI") and has been so employed since 2005. Your affiant has been trained in accounting and financial investigative techniques at the Federal Law Enforcement Training Center. Your affiant's formal education includes a Juris Doctor Degree, which I obtained from the University of Iowa in 2000. During the course of your affiant's official duties with the IRS-CI, I have completed training within the IRS as to legal and accounting principles and federal statutes describing criminal violations of the United States Code, as enumerated in Titles 18, 26, and 31. Similarly, your affiant has attended several conferences, seminars, and in-service trainings relating to the tax laws, the Internal Revenue Code, money laundering, and investigating financial crimes, at a variety of law enforcement venues. Your affiant has experience in debriefing defendants, cooperating witnesses, and other persons who have had personal experience and knowledge of the activities associated with fraud schemes and other criminal violations.

5. Based on your affiant's training and participation in other investigations involving financial crimes, I know that:

   A. Tax preparers maintain records of income, expenses, assets and liabilities, and client files at locations normally central to their business operations.

B.  Tax preparers typically maintain records of income, expenses, and assets and liabilities relative to their own tax liability at locations normally central to their business operations.

C.  Tax preparers typically retain copies of tax returns, client information sheets, books, receipts, notes, working papers, etc., which they utilize for their preparation of tax returns.

D.  Tax preparers maintain business records on computers including various types of mass storage devices, i.e. hard drives, floppy discs, external hard drives and storage devices typically known as thumb drives.

E.  That individuals involved in illegal activities maintain books, receipts, notes, ledgers, and other papers to conduct their illegal activities, even though such documents may be in code.  That it is common for individuals involved in illegal activities, to hide proceeds, including but not limited to, currency, financial instruments, precious metals, jewelry, vehicles and other items of value and/or proceeds of the illegal activities, records of illegal activities, in secure locations, on their person, and within their containers, residences, offices, garages, storage buildings and safe deposit boxes for ready access, and also to conceal such items from law enforcement authorities.

F.  That individuals involved in illegal financial fraud activities amass large proceeds from these activities, and that these individuals attempt to legitimize these proceeds. I know that to accomplish these goals, these individuals utilize, including but not limited to, foreign and domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations, and business fronts.

G. That individuals involved in money laundering activities and other illegal financial fraud activities sometimes attempt to conceal substantial wealth from law enforcement authorities, and in particular the Internal Revenue Service, if they gained such wealth from illegal activities or are attempting to evade the proper tax liability resulting from such wealth.

H. That the courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, including but not limited to money laundering and bank and wire fraud.

## BACKGROUND INFORMATION ON THOMAS WILLIAM QUINTIN

6. In 2006 and 2007 Quintin, who had at least 2 prior federal felony fraud convictions, was investigated for receiving fraudulent tax refunds. Quintin was the owner of a tax preparation business where he used deceased individuals' social security numbers ("SSNs") to file U.S. Individual Income Tax Returns with the IRS, and thereby fraudulently obtain tax refund monies. On August 9, 2007 in D. Colo. Case # 07-cr-00085-WYD, Quintin pled guilty to violations of 42 USC 408(a)(7)(B) Misuse of a Social Security Number, 18 USC 287 False Claims Against the United States, 18 USC 1343 Wire Fraud, and 18 USC 982 Criminal Forfeiture. Quintin was sentenced to 46 months in jail and 36 months supervised release to follow. Quintin was also ordered to pay $282,588.00 in restitution to the IRS, and to forfeit a vehicle and over $30,000 as involved in and proceeds of his crimes. In July 2009 Quintin failed to return to the halfway house in Denver, where he was serving out the remainder of his sentence described above. Quintin was indicted by a federal grand jury in the District of Colorado for Escape, on September 15, 2009. A warrant was issued for Quintin's arrest, and on

October 7, 2009 Quintin was arrested by the U.S. Marshals and taken into custody, at which time he was carrying on his person, $4,000 cash, a cell phone, thumb drive, mail box key #108 and in his wallet a business card for Arapahoe Pack and Ship located at 9674 East Arapahoe Road, Greenwood Village, CO 80112 with the #108 written on the card.

## EVIDENCE OF PROBABLE CAUSE RELATING TO WIRE FRAUD, MONEY LAUNDERING, AND FALSE CLAIMS

7. Legitimate tax preparation services will often prepare a tax payer's tax return and advance or loan the tax payer a portion of the anticipated refund (often referred to as an "R.A.L", or "Refund Anticipated-Loan"), so the tax payer has access to funds immediately. The legitimate tax preparation service will then wire transfer the tax return to the IRS, which in turn wire transfers the refund moneys to the legitimate tax preparation service's bank account.

8. It appears that Quintin is currently using another social security number scheme to file false tax returns and receive the fraudulent refunds. Quintin has SSNs of people who are not already in the IRS filing system. Quintin, purporting to be a tax preparation service, puts those SSNs on the IRS Form 1040 return with a fictitious name or a name that does not match the real name of the person with that SSN. Quintin writes a check to the person named on the return from one of his business accounts with "R.A.L." written on the memo line, but holds this check. Quintin then electronically wires the false tax return to the IRS with his bank routing and account number for the fraudulent refund to be deposited into. The U.S. Treasury then electronically deposits the refunds into one of Quintin's bank accounts. Quintin then takes the checks he wrote to the people named on the returns and deposits them into his bank account. We believe that Quintin is doing this

to give the appearance that he is issuing R.A.L.s to the people named on the returns and therefore has a legitimate tax preparation business and thus not alert the suspicion of the bank.

9. The IRS Fraud Detection Center (FDC) has traced 641 refunds electronically deposited by US Treasury into Quintin's Total Tax Services Bank Account XXXXXX3973 (#3973) at TCF National Bank. All of the tax returns filed appear to be 2008 tax returns. A sampling of the 641 social security numbers used on the returns indicates all were for first time filers and all over the age of 50-a highly suspicious situation. A random sampling of 104 of these suspicious Quintin returns was queried in Accurint, a resource for online public and non-public information. Out of the 104 SSNs, 32 names associated with the SSNs in Accurint did not match with the names associated with the SSNs in IRS System. Out of the 104 SSNs queried 72 SSNs resulted in "No Records Found" in Accurint. In other words, none of the Quintin-generated tax refunds contained valid name and SSN information.

10. The IRS database, Integrated Data Retrieval System (IDRS) queries resulted in SSNs belonging to taxpayers with basically no filing histories. All of the IDRS taxpayers are also between the ages of 64 to 73 with no Dates of Death recorded. A verification of a sampling of the Forms W-2 filed with the tax returns was done by the FDC Center. The sampling verification revealed that all of the Forms W-2 were false.

11. Your affiant knows that institutions file a Currency Transaction Report ("CTR) for a cash transaction exceeding $10,000. Multiple CTRs have been filed on the Quintin entities of Total Tax Services, Total Tax Services, LLC, and Total Tax and Accounting, all of which purport to be officed at 2421 S University Blvd, Denver, CO 80210; the

investigation has revealed that this address is just a mailbox service, not a legitimate office. CTRs show that Quintin withdrew approximately $300,000 out of Denver area bank accounts in the last 30 days. On the CTRs the address for Thomas Quintin is 5650 East Evans Apt. 105, Denver, CO 80222, and 9674 East Arapahoe Road, Greenwood Village, CO 80112. Both of those addresses are also simply mail box services, not legitimate business offices.

12. When Quintin was arrested on October 7, 2009, IRS-CI Agents interviewed witness Jay Culbertson, who was with Quintin, working for Quintin and staying in the same hotel with Quintin. Culbertson said that Quintin gave him $8,000 to buy his car, 2003 Toyota Camry, license plate 753 TNC, VIN #4T1BE32K73U223932.

13. Culbertson also told Agents that he and Quintin have been staying at a hotel called Stay Bridge, located at 7150 South Clinton Street, Centennial, Colorado. Culbertson said he and Quintin have each been renting a room there. Culbertson said the room he is renting is room number #3308 and the room Quintin is renting is room #3324. The hotel's General Manager was interviewed and he said that room #3324 is registered under the name Andrew Parkins and Parkins pays cash for the room. The investigation has revealed that Parkins is another associate of Quintin's, who also has a prior felony conviction involving false identification information. Culbertson has rented his room under his own name and Culbertson pays for the room in cash provided by Quintin.

14. Culbertson said all the money he has received since Labor Day 2009 has come from Quintin. Culbertson said he works for Quintin driving Quintin around and that Quintin gives him $500 a week in cash. Culbertson gave examples of the places he drives Quintin to such as banks, dentists, and grocery stores. Culbertson calls Quintin in the

morning and Quintin tells him his itinerary. The banks Culbertson drives Quintin to are; TCF National Bank, Compass Bank, Wells Fargo, and First Tier Bank. Culbertson also drives Quintin to Quintin's business, located at 7887 E. Belleview Avenue, #1100, Englewood, Colorado. Culbertson said that he has been in Quintin's business office and has personally seen Quintin working on a computer there.

15. Agents discovered from the secretary at the E. Belleview Avenue business location that she was instructed to answer the phone for Total Tax Services by saying "DTC Gold Company". Culbertson said that he has overheard Quintin talking to another person about buying and selling gold in addition to his tax business. Also the owner of the office building, told IRS-CI Agents that the lease for Total Tax Services is under the name Total Tax Services and Thomas Quintin.

16. Culbertson said that Quintin asked him to hold $60,000 in cash for him. Culbertson said that the cash is in a briefcase in Culbertson's hotel room #3308. (subject "Samsonite Padlock Briefcase").

17. Culbertson advised agents that in Culbertson's hotel room #3308, there is a computer and printer that Quintin gave him. Culbertson said that based upon personal observations, Quintin will use the computer in Culbertson's room. Culbertson said he thought Quintin was doing tax returns on the computer and Quintin would shred a lot of paper. Quintin would tell Culbertson not to watch him when he was on the computer and told Culbertson to go watch TV instead. Culbertson said there are also a similar computer and printer in Quintin's hotel room #3324.

18. On October 9, 2009, Culbertson gave consent to IRS-CI Agents to take a Compaq Presario computer and two briefcases from his hotel room #3308. One briefcase, a

Samsonite Padlock briefcase, that Culbertson said contained the $60,000 given to him by Quintin. The other briefcase, a Samsonite combination lock briefcase, Culbertson said Quintin told him to buy and gave Culbertson money to buy it. The Compaq Presario computer was given to Culbertson by Quintin. IRS-CI Agents took the items without searching them, and secured them at the IRS-CI Office located at 1999 Broadway St., Denver, Colorado 80202. IRS-CI Agents are awaiting the issuance of search warrants herein.

19. According to Colorado State Wage and IDRS there have been no wages or income reported for Quintin since 2006.

20. Thomas Quintin was the signor on three accounts at TCF National Bank. One account number is XXXXXX3973 (#3973) and the name on the account is Total Tax Services; the account had an additional signer, "Jay R. Terry", added via the internet banking website. Another account number is XXXXXX0151 (#0151) and the account name is Thomas William Quintin. Third account number is XXXXXX5481 (#5481) and the account name is Total Tax Services. On October 6, 2009, a confidential bank source from a bank in Greenwood Village, Colorado contacted an IRS-CI Investigative Analyst about Quintin. The source noted unusual activity occurring on the account of the requestor, Thomas Quintin / Total Tax Services (account #3973). The SSN listed on the account #3973 for "Terry" revealed it to be associated with a deceased individual. Deposit activity on the account was extremely suspicious since it consisted of hundreds of electronic deposits from the US Treasury, ostensibly tax refunds for numerous individuals (not Quintin) and checks written against the same account (#3973) made payable to numerous individuals but deposited back into that account by Quintin. The

endorsements on those checks were not made by the payees but via a rubber stamp endorsement reading: "For Deposit Only Total Tax Services account #3857253973" or "Credit to the account of the named payee absence of endorsement guaranteed TCF". The memo line on all the checks which were filled out by a typewriter read "R.A.L." which normally stands for "refund anticipated- loan" when seen on other tax preparer's accounts. A random sampling of the SSNs associated with the US Treasury electronic deposits yielded no TCF account holders.

21. A further review of TCF bank records revealed another account in the name of Total Tax Services. That account is #5481 opened 10/02/09 at the Park Meadows Branch with one authorized signer -Thomas W. Quintin. This account was opened with a $25,000 check drawn on the other Total Tax Services account (#3973). Review of a third and final TCF account (personal account # 0151) for Quintin for which he was the lone signer, listed a home address of 9674 E. Arapahoe Road Ste 108, Greenwood Village, CO 80112. This address is actually a commercial mail receiving agency. The bank source determined Quintin's SSN listed on all these subject accounts was not a valid SSN.

22. There are two accounts at Compass Bank on which Thomas Quintin is the signor. One account is XXXXXX3454 (#3454) and the name on the account is Total Tax Services, LLC. The other account is XXXXXX0016 (#0016) and the account is also under the name Total Tax Services, LLC. Security officials at Compass Bank told IRS-CI analyst that all or most of the deposits going into the two accounts are electronic deposits from US Treasury or from deposits of checks written on the account or transfers from Quintin's Wells Fargo Accounts.

23. There are two accounts at Wells Fargo Bank on which Thomas Quintin is the signor. One account is XXXXXX6721 (#6721) and is in the name of Total Tax and Accounting and the other account is XXXXXX9055 (#9055) is a savings account in the name of Total Tax. Security Officials at Wells Fargo Bank told the IRS-CI analyst that all or most of the deposits going into the account #6721 are electronic deposits from US Treasury. The Security official also said that the deposits for the second account #9055 consists of $100 a month transfers from the other Wells Fargo account #6721. Two CTRs were filed by Wells Fargo for the account ending in #6721 in the name of Total Tax and Accounting with Thomas Quintin as the sole signor on the account. The CTRs show $30,000 cash being withdrawn by Quintin in September 2009. The SSN for Quintin is his correct SSN, but the addresses given for both the business and Quintin are mail box service locations, the same scheme Quintin used on the TCF accounts.

24. There are two accounts at FirsTier Bank on which Thomas Quintin is the signor. One account is XXX0622 (#0622) and the name on the account is Total Tax Services, LLC. The other account is XXX0995 (#0995) and the account is also under the name Total Tax Services, LLC. A security official at FirsTier told IRS-CI analyst that all or most of the deposits going into the accounts are electronic transfers from US Treasury.

## SEARCH

## Compaq Presario Computer taken from Stay Bridge Hotel Room #3308

25. We seek authority to search the Compaq Presario computer taken from the Stay Bridge Hotel room #3308 located at 7150 South Clinton Street, Centennial, Colorado 80112. See paragraphs #2, 17 and 18.

**Samsonite Padlock Briefcase taken from Stay Bridge Hotel Room #3308**

26. We seek authority to search the Samsonite Padlock briefcase in Stay Bridge Hotel Room #3308, at 7150 South Clinton Street, Centennial, Colorado 80112.  See paragraphs #2, 16 and 18.

**Samsonite Combination Lock Briefcase taken from Stay Bridge Hotel Room #3308**

27. We seek authority to search the Samsonite combination lock briefcase in Stay Bridge Hotel Room #3308, at 7150 South Clinton Street, Centennial, Colorado 80112.  See paragraphs #2 and 18.

**Stay Bridge Hotel Room #3324**

28. We seek authority to search the hotel room #3324 located at Stay Bridge Hotel, 7150 South Clinton Street, Centennial, Colorado 80112 .  See paragraphs #2, 13 and 17.

**Total Tax Services, Total Tax Services, LLC, Total Tax and Accounting and DTC Gold Company**

29. We seek authority to search the business located at 7887 E. Belleview, Suite 1100, Englewood, Colorado 80111.  See paragraphs #2, 11, 15, 20, 21, 22, 23 and 24.

**Thumb drive**

30. We seek authority to search the thumb drive found on Quintin when he was arrested on October 7, 2009.  See paragraphs #2, 6, and 17.

**Cell Phone**

31. We seek authority to search the cell phone found on Quintin when he was arrested on October 7, 2009.  See paragraphs #2, 6 and 14.

**Mail Box located at Arapahoe Pack and Ship**

32. We seek authority to search the mail box with the mail box key found on Quintin when he was arrested on October 7, 2009. The number on the key is 108 and found in Quintin's wallet was a business card for Arapahoe Pack and Ship located at 9674 East Arapahoe Road, Greenwood Village, CO 80112 with the number 108 written on the card. See paragraphs #2, 6, 11 and 21.

## Computer Data

33. Evidence to be seized is detailed in Attachment B and includes tax records and business financial records found at the Total Tax Services, Total Tax Services, LLC, Total Tax and Accounting, and DTC Gold Company located at 7887 E. Belleview, Suite 1100, Englewood, Colorado 80111. In addition to paper records, the items to be seized include information stored in computers at the business location; specifically all records relating to violations of Title 18 United States Code, Section 287 (false and fictitious claims), Title 18 United States Code, Section 1343 (wire fraud) and 18 United States Code and Section 1956(a)(1)(B)(i) (money laundering), including computer hardware, computer software, computer-related documentation, computer data (including remotely stored but accessible using discovered and seized hardware, software and passwords), file transfer records, and/or forensic evidence of these items on the described computer.

34. Your affiant has consulted with Computer Investigative Specialist (CIS) David Riordon assigned to the IRS-CI Electronic Crimes Program (ECP). CIS Riordon is specially trained in computer searches and seizures. CIS Riordon has conducted numerous searches and seizures involving computers and computer data.

35. CIS Riordon has summarized the following information: Computer hardware, software,

documentation, passwords, and data security devices may be important to a criminal investigation in two distinct respects: (1) the items themselves may be instrumentalities, fruits, and/or evidence of crime; and/or (2) items may have been used to collect and store information about crimes (in the form of electronic data). Thus, Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize computer hardware, software, documentation, passwords, and data security devices which are: (1) instrumentalities, fruits and/or evidence of crime; and/or (2) storage devices for information about crimes.

36. Based on his knowledge, training, and experience, CIS Riordon knows that searching and seizing information from computers often requires agents to seize most of all electronic storage devices (along with related peripherals) to be searched later by a qualified computer expert in a laboratory or other controlled environment. This is true because of the following:

## THE VOLUME OF EVIDENCE

37. Computer storage devices can store the equivalent of thousands of pages of information. Additionally, a suspect may try to conceal evidence; he or she might also store it in random order with deceptive file names. This may require searching authorities to examine all the stored data to determine which particular files are evidence or instrumentalities of crime. This sorting process can take weeks or months, depending on the volume of data stored, and often it would be impractical to attempt this kind of search on site.

## TECHNICAL REQUIREMENTS

38. Searching computer systems for criminal evidence is a highly technical process requiring

expert skill and a properly controlled environment.  For example, on site and laboratory analysis by a qualified computer specialist is often required in order to properly retrieve and analyze electronically stored (computer) data, document and authenticate the data, and prevent the loss of the data either from accidental or deliberate programmed destruction.  In many cases, the evidentiary data can be backed up to government owned computer data storage devices at the site of the search.  However, there are circumstances that may necessitate the seizure and removal of the entire computer system and peripheral devices to a secure laboratory setting in order to analyze and extract the evidence.  To effect accurate and complete analysis may require seizure of all computer equipment and peripherals which may be interdependent, the software to operate the computer system, data security devices (including passwords) and related instruction manuals which contain directions concerning the operation of the computer system and software programs.  This is true because the peripheral devices which allow users to enter or retrieve data from the storage devices vary widely in their compatibility with other hardware and software. Many system storage devices require particular input/output devices in order to read the data on the system. It is important that the computer expert be able to properly re configure the system as it now operates in order to accurately retrieve the evidence.  In addition, the computer expert needs the relevant system software (operating systems, interfaces, and hardware drivers) and any application software which may have been used to create the data (whether stored on hard drives or on external media), as well as all related instruction manuals or other documentation and data security devices.

39. Based on the above facts and circumstances and information, permission is requested to seize all computer systems and peripherals if necessary even though there may be unrelated information stored on the computer system(s). This unrelated data will not be used and will be separated (to the extent possible) from the evidentiary data and preserved.

### ITEMS TO BE SEIZED

40. Based on all of the facts and circumstances described in this affidavit for search warrant, along with your affiant's training, experience, and consultations with others, there is probable cause to believe that the items described in Attachment B are currently located at the premises known and described in Attachment A, and that those items constitute evidence, fruits, and/or instrumentalities of violations of Title 18 United States Code, Section 287 (false and fictitious claims), Title 18 USC 1343 (wire fraud) and Title 18 United States Code, Section 1956 (money laundering). Attachments A and B are attached to and incorporated into this affidavit for search warrant.

41. The terms "records," "documents," and "materials" include all of the items described in Attachment B in whatever form and by whatever means they may have been created and/or stored. This includes any handmade, photographic, mechanical, electrical, electronic, and/or magnetic forms. It also includes items in the form of computer hardware, software, documentation, passwords, and/or data security devices.

**a. Computer Hardware**

42. Computer hardware consists of all equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. This includes any data processing devices (such as central processing

units, memory typewriters, and self contained "laptop" or "notebook" computers);
internal and peripheral storage devices (such as fixed disks, external hard disks, floppy
disk drives and diskettes, tape drives and tapes, optical storage devices, transistor like
binary devices, compact flash cards, smart media cards and other memory storage
devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters,
video display monitors, and optical readers); related communications devices (such as
modems, cables and connections, recording equipment, RAM or ROM units, acoustic
couplers, automatic dialers, speed dialers, programmable telephone dialing or signaling
devices, and electronic tone generating devices); as well as any devices, mechanisms, or
parts that can be used to restrict access to computer hardware (such as physical keys and
locks).

### b. Computer Software

43. Computer software is digital information which can be interpreted by a computer and
any of its related components to direct the way it works.  Software is stored in electronic,
magnetic, optical, or other digital form.  It commonly includes programs to run operating
systems, applications (like word processing, graphics, or spreadsheet programs, utilities,
compilers, interpreters, and communications programs).

### c. Computer related Documentation

44. Computer related documentation consists of written, recorded, printed, or electronically
stored material which explains or illustrates how to configure or use computer hardware,
software, or other related items.

### d. Computer Passwords and Other Data Security Devices

45. Computer passwords and other data security devices are designed to restrict access to

or hide computer software, documentation, or data.  Data security devices may consist of hardware, software, or other programming code.  A password (a string of alpha numeric characters) usually operates as a sort of digital key to "unlock" particular data security devices.  Data security hardware may include encryption devices, chips, and circuit boards.  Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre set security functions when touched.  Data security software or code may also encrypt, compress, hide, or "booby trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

46. All items seized will be transported to the IRS-CI office, located at 1999 Broadway St., Denver, Colorado 80202.  All items seized will be handled and stored in compliance with IRS-CI procedures.   All transfer of seized items and evidence will be in compliance with IRS-CI policy in order to facilitate a proper chain of custody.

## Conclusion

47.     Based upon the facts and circumstances described, your affiant submits that there is probable cause to believe that on the premises of, (1) Total Tax Services, Total Tax Services, LLC, Total Tax and Accounting, and DTC Gold Company located at 7887 E. Belleview, Suite 1100, Englewood, Colorado 80111, (2) Stay Bridge Hotel Room 3324, 7150 South Clinton Street, Centennial, Colorado 80112, (3) thumb drive, (4) cell phone, (5) Samsonite combination lock briefcase, (6) mail box, key number 108, located at Arapahoe Pack and Ship, 9674 East Arapahoe Road, #108 Greenwood Village, Colorado 80112, (7) Samsonite Padlock briefcase and (8) Compaq Presario computer are the evidence, fruits and instrumentalities of Title18 United States Code, Section 287 (False

and Fictitious Claims), and Title 18 United States Code, Section 1956 (money

laundering), and Title 18 United States Code, Section 1343 (wire fraud).

In consideration of the foregoing, your affiant requests that this Court issue a search

warrant authorizing the search of the location described in Attachments A, and the seizure of

items described in Attachment B, which attachments are incorporated by reference as if fully

set forth herein.

Trista G. Merz, Special Agent
IRS-CI

Subscribed to and sworn before me this ___ day of _____, at ___ P.M.

United States Magistrate Judge
District of Colorado

## <u>ATTACHMENT A</u>

## ITEM TO BE SEARCHED

**Samsonite Combination Lock Briefcase**
**IRS-CI Office 1999 Broadway St., 27th floor, Denver, CO 80202**

The item to be searched is a Samsonite Combination Lock Briefcase being stored at the IRS-CI office located at 1999 Broadway St., 27th floor, Denver, Colorado 80202.

(See Photo Below)



## **ATTACHMENT B**

## **ITEMS TO BE SEIZED**

The following records and property for the period of January 1, 2008 to October 7, 2009 and related computers and computer data storage devices, which are fruits, instrumentalities, or evidence, of violations of federal law involving Title 18 United States Code, Section 287 (False and Fictitious Claims), Title 18 United States Code, Section 1343 (wire fraud) and Title 18 United States Code, Section 1956 (money laundering) "Documents" herein defined as written, printed, typed, recorded, electronic or graphic matter of every type or description, formal and informal, whether or not wholly or partially in handwriting, including, but not limited to, tax returns, visit logs, billing records, and other records of customer office visits and payment records, customer records, financial and accounting records, appointment books or calendars, minutes of meetings, instructions, directions, policies, notes, memoranda, correspondence, letters, diaries, desk pads, notebooks, forms, pamphlets, reports, microfilm, scanned documents and material stored in any data storage system, to include electronic storage media.

1. All rolodexes, calendars, diaries, customer and supplier contact information and appointment books in whatever form, electronic or otherwise;

2. Any cash, currency, gold, personal and business bank records, including, bank statements, financial statements, cancelled checks, deposit tickets, safe deposit records and keys, receipts for cashier's checks, money orders, and traveler's checks, records of savings and checking accounts, records relating to wire transfers, and credit card information related to Thomas Quintin, Total Tax Services, Total Tax Services, LLC, Total Tax and Accounting and DTC Gold Company.

3. Documents relating to business and personal income and expenses, including, business and personal income tax returns; return information; Forms W-2, 1098, and 1099; invoices, receipts, prepared books and records; stock brokerage statements; check stubs; inventory records; records of capital assets, depletion and depreciation; cash disbursement and receipt journals, general ledgers, subsidiary ledgers, trial balances and financial statements, file folders and their content, including summary sheets; prepared income tax worksheets and schedules related to Thomas Quintin, Total Tax Services, Total Tax Services, LLC, Total Tax and Accounting and DTC Gold Company.

4. Documents relating to the establishment, ownership, or control of Thomas Quintin, Total Tax Services, Total Tax Services, LLC, Total Tax and Accounting and DTC Gold Company, including Articles of Incorporation, contracts, loan agreements, memorandum of understanding, promissory notes, invoices, business licenses, professional licenses and registrations;

5. Items and documents showing the indicia of occupancy and ownership of the premise to be searched, including rent receipts, mortgage payments, property taxes records, utility bills, telephone bills, addressed mail, personal identification, rental agreements, sales receipts, photographs, vehicle registration documents, state and federal income tax returns;

6. Documents relating to businesses, assets, or property, owned wholly or partially by Thomas Quintin, Total Tax Services, Total Tax Services, LLC, Total Tax and Accounting and DTC Gold Company records used to prepare federal income tax returns such as 1099 Forms, W-2 Forms, purchase and sale agreements, billing records, client lists, Quickbooks, cash receipts, receipt books and expense receipts;

7. All financial records relating to Thomas Quintin, Total Tax Services, Total Tax Services, LLC, Total Tax and Accounting and DTC Gold Company, including bank records, accounting ledgers, loan documents, payroll records, wire transfer records, promissory notes, credit references, security agreements, financial statements, deposits, checks, records of off-site locations used to store records, and safe deposit box keys;

8. All employment records, including W-2 Forms, W-4 Forms, 1099 Forms, employment applications, schedules or lists of payments and payroll records for Thomas Quintin, Total Tax Services, Total Tax Services, LLC, Total Tax and Accounting and DTC Gold Company;

9. Computer hardware, consisting of all equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware includes, but is not limited to, any data-processing devices(such as central processing units, memory typewriters, self-contained "laptop" or "notebook" computers, "palm pilots", I-pods, memory facsimile machines and "schedulers"); internal and peripheral storage devices (such as fixed disks, external hard drives, floppy disk drives and diskettes, USB storage devices, optical storage devices, transistor-like binary devices, read/write CD and DVD devices, thumb drives, and any and all storage devices); peripheral input/output devices (such as keyboards, printers, scanners, video display monitors, mouse devices); and related communications devices (such as modems, cables and connections, recording equipment, RAM or ROM units); as well as any devices, mechanisms, or pars that can be used to restrict access to computer hardware (such as physical keys and locks).

10. Computer software, that is, digital information which can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating systems, applications (like word

processing, networking, graphics, accounting, presentations or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

11. Computer passwords and other data security devices, that is, a string of alphanumeric characters designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programmable code. A password usually operates as a sort of digital key to "unlock" particular storage data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, destroy or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.